Mr. Hanson, when you're ready, adjust it as you need to and thanks for helping the other matter. You're welcome. May it please the court, Ms. Shirley. Jonathan Arrington was a partner in a Des Moines business called Recon Roofing and Construction. He joined the business in its early stages in early 2019 and he helped turn Recon into a successful business. However, at the same time, Mr. Arrington was in charge of the finances for Recon Roofing and he was dealing to the tune of $315,835. Now, he obtained his interest in this business substantially, the substantial portion of the interest, after he was already stealing, didn't he? That's correct. Now, if you look at that under Iowa law, don't you end up with a classic case of unjust enrichment involving specific property and that would be, I think the case is State Department of Human Services, XREL Palmer v. Utisis, that you end up with unjust enrichment because it meets the three elements, you know. I mean, was he enriched? Was the other guy deprived of his property and is it unjust for him to keep that interest, right? And then it says the preferred remedy when there's an identifiable property, and this goes back, you know, 30 years, is constructive trust. And so, for you to claim any kind of an offset, don't you have to get by the whole constructive trust theory first? I mean, isn't that, because I guess when I read it and I looked at it and I said, well, doesn't Iowa have a constructive trust law? And I looked at it and they do, and then I'd say, well, at that point, you have nothing to claim the offset on because you have no ownership interest that was valid, that no ownership interest that a court is required to recognize. And this is a really interesting and thorny and knotty series of questions in some ways, but you got to have something first that you could claim was yours, that you gave up. And I don't think that Mr. Arrington can. Why am I wrong? Judge Erickson, I think you make a fine argument for the remaining partner for a lawsuit in Iowa State Court, but the fact of the matter is we're dealing with the federal restitution statutes and what they provide. And I'll get right into it. Mr. Arrington's stated both legal and factual error. The legal errors, this court's review would be de novo. The factual errors, clear error. We're dealing with a statute that assigns the burden of proof in restitution issues in a somewhat unclear way. We know from 3664 subsection E that the government has the burden of proof on amount of loss. The defendant has the burden of proof on all matters related to his wherewithal and the rest. The district court is to decide what justice requires in an individual case. And I think what happened here is there's a split of authority among the circuits, but more importantly for present purposes, there have been mixed signals from this court on which party bears the burden of proof. And of course, the district court placed the burden on Mr. Arrington. You know, and the mixed signals basically are kind of like, well, either it rests on the person who's claiming the offset or the judge ought to assign it injustice. And then we would review that assignment for abuse of discretion? I think it's de novo review. I think this is a purely legal issue. It is. And so if the question is what justice requires, that's a law question, not a fact question. I think it is. And I think my view is the district court misconstrued this court's cases. And I do think there is a way to reconcile them. It's the vast majority of cases, justice should require the defendant to prove that he made some sort of compensation to a victim. So we have the Bush and the Pew cases on which the government heavily relies. Their court's language isn't expressly clear, but I read them to suggest that there's some question as to whether there is any sort of compensation made to the victim. On the other hand, we have the Fonseca case, which is clearly Mr. Arrington's best case. That's the case of the stolen firearms, where some of the firearms were recovered by the time of sentencing. And this court held it was error for the district court not to reduce the restitution obligation by the value of the recovered guns. There, as here, there's no doubt that there was compensation given back to the victim. The only question was the value of that compensation. And in many cases, including Mr. Arrington, my read is that justice requires the government to bear the burden of proof to prove the value of the restitution when the government's in a better position to do so. And that was the case here, where again, no question Mr. Arrington gave back his 45% interest in the company, but a question as to the value. And by the time the district court's in the position of making this valuation, we're more than two years removed from when Mr. So in that respect, clearly the government, as the victim's advocate for restitution matters, is better positioned to provide to the court the information by which it can make evaluation. Counsel, do you think there's any role for purposiveness, the purpose that the payment came at? I don't think so. And I think that's... Not any at all? And again, I think this is a debt that the compensation could have gone to. I think there is a role for the court to figure out, you know, is the compensation directed toward repayment for the matter at issue? But as far as the district court in this case suggesting that Mr. Arrington had the burden of proof to prove specifically that his intent was to compensate the other owner for the theft, I don't read the cases that way. And certainly the statute doesn't say the defendant has that intent. And I think you can infer from Frazier, that was the case involving the arson where this court suggested that the deposit should have been reduced from the restitution for the burned-down house. Obviously, the defendant's purpose in providing the deposit wasn't so that he could burn down the house later and pay back the victim. There was no intent analysis there. So Frazier's helpful to him. The Ruff case, Ruff 1, as I said in my brief, involving the forfeiture of the drug dealer's car and then the restitution for the drug buy money expended in the investigation. Obviously, the defendant did not give up his vehicle to pay back the agency for the drug buy money. It just matters that the victim is made whole or partially whole. And that's where the district court got it wrong, Your Honor. So intent, again, not an issue here. And even if it were an intent, it's a conclusion that it's more likely than not that Mr. Arrington had another purpose for giving back the money. And I don't think it matters, this is a point the government made, I don't think it matters that Mr. Arrington didn't want law enforcement involved or that he was trying to make a civil remedy for what could be a criminal matter. Of course, that was probably in his mind. He was on federal supervisory release in the District of Nebraska for fraud, so that makes sense. What matters is whether the repayment goes toward making the victim whole again, regardless of the defendant's other intent. And in a case like this where there's nothing, there's really no other logical reason for Mr. Arrington to give back his interest for $1 other than to avoid law enforcement getting involved and make the victim feel like he's been compensated for the theft, I think it's more likely than not that that was the reason for Mr. Arrington giving up his valuable interest for $1. And you want $50,000 knocked off the $315,585, right? So my tougher argument is that the District Court clearly erred in coming up with that $50,000 number. So we think it's a bigger number, we think it's more akin to what our expert posited, that his interest was worth nearly $500,000 and thus more than the amount that he stole. You say at least $50,000, you're time-shrinking. At least $50,000? How's that? More than $50,000, we certainly think it's true. At least L.L.'s pretty bigger, but go ahead. This is a factual issue, and this is an issue Mr. Arrington made very clear, that amount of loss and offset was going to be an issue at his sentencing. And we did the best that we could with our expert, with our information to posit something. And I think the government can be expected to do something to counter that when we offer that information. And in that case, what the District Court had is what our expert posited, and he baked in all the caveats and all the concerns about fraud and the concerns about this being a new business. He came up with a number, and I think that's the number the court should have gone with. If there are no further immediate questions, I would reserve the remainder of my time for rebuttal. You'll end up with two minutes. Thank you, Your Honor. Ms. Shirley. Thank you. May it please the Court, Mr. Hanson. The defendant, Jonathan Arrington, admitted that he stole $315,835 from his employer while he was on supervised release for another federal fraud conviction. The District Court did not abuse its discretion by imposing restitution in that very same amount. Mr. Hanson talked about the burden shifting that is contained within the Mandatory Victims Restitution Act. And it is true that Eighth Circuit hasn't set a hard and looks at the facts of each case to determine what justice requires. Counsel, how do you read the words in Ruff that says defendant has the burden to initiate further proceedings? I'm quoting. I'm quoting the words of the court. Initiate further proceedings regarding any restitution offset. Do you know the words I'm referring to? Yes. What do you think those mean? Those mean that the defendant has the burden to prove any offset. And that would be consistent with Pugh and Bush and other Eighth Circuit cases that the District Court cited, along with more recent District Court cases in the circuit that have also found the same. What about Fonseca? How do you distinguish that? Or is it simply a later case? Fonseca is distinguishable because it involves guns, an actual tangible property that were forfeited by the government during the investigation and then also some, I believe, after the investigation. And that invokes a special portion of the Those involve a different analysis than what we're looking at here because the government has to prove the difference between the property's original value minus its retrieved form. So the fact that we're dealing with tangible property that was forfeited before criminal proceedings is different from the instant case or also the case that we have in the Pugh case and the Bush case where the defendant stole money. So if they immediately fence it and keep the money in a safe deposit box, exact money, there's a different rule for the money that's kept after the fencing operation than if they had simply kept the item and turned the item back? That seems like an awfully thin distinction in some cases. Well, that's what Fonseca says. It says that you have to look at the, that's what the court said. You have to look at the difference in the property. But money is money and that's the value. What's the date of the Fonseca case? Do you know off the top of your head? The date? Yeah. If it's easy, but I can look here too. I have it here. 2015. Thank you. Thank you, Judge Erickson. Go ahead and proceed with your argument. Thank you. So the most similar cases which I was talking about were the Pugh case and the Bush case. In those cases, the defendant stole money but argued that they later gave the value back to the victims in separate transactions. And that should have been credited against a restitution obligation. In those cases, the court found that the defendant has the burden of proving the offset. And that's what justice requires. And so in the district court, in this case, that's exactly what Judge Locher did. He said there is no majority or minority rule in this circuit. It's a case-by-case basis. He went through each of the cases and the facts and determined that because this case was analogous to the Pugh and the Bush cases, that justice required the defendant proving that he deserved an offset to restitution. Now as to the fact that the defendant had that burden, the defendant did not in fact meet that burden of proving the offset. First, the defendant failed to show that his 45% interest, which he obtained for $450 while he was stealing from the company, exceeded or even remotely approached the restitution amount. Under the defendant's theory... Well, it's worth $50,000, right? According to the district court, yes. Why wasn't $50,000 subtracted before we do anything? Because the government went into the sentencing arguing that he had no interest because he was stealing while... Don't do the government's position. Take it from the district court point. That's enough for me. Okay. So the district court says it's worth $50,000, so why isn't $315,000 minus $50,000 to start with? Because the defendant never showed that his intent was to actually repay recon roofing. In the Pew and the Bush cases, which I've cited, the intent was important because at the restitution hearings, or the subsequent, I believe, evidentiary hearing, it was unclear and ambiguous as to what the purpose of the payments were. So in this case, what do we know? We know that it was established at sentencing that the defendant was emailed a unit surrender agreement after the theft was discovered. He was told, do the right thing, sign the business back to me, and there will be no other issues. The unit surrender agreement contained nothing regarding reimbursement. And in an exhibit that the government admitted at the sentencing, it was a video interview of the defendant. And he claimed he had no idea why the owner wanted him gone, he didn't think there were any problems, and he willingly sold back his shares because he didn't want any problems. And he said, I quote, we went apart our ways in a way that we agreed on. The mere claim by the defendant that the likely purpose was for reimbursement is not evidence. Who was in the best position to determine the intent, what Mr. Arrington's intent was? That was a give back shares case, right? Did the district give back shares of stock, right, case, was it? Which case? The one you're just talking about now. Those are the facts in this case. Oh, you're doing the facts in this case. Yes. I thought you were describing a similar case. Proceed. No, those were the facts that we presented at sentencing. I've got those down. I thought you'd found a case that was similar that I didn't know about. No, that would have been great. But the mere claim that the likely purpose or the logical purpose was reimbursement, yeah, that may well be, but that wasn't proved up. There was no evidence. And who was in the best position to prove what the intent of giving back the shares was? That would be Mr. Arrington himself, and he didn't do that. In fact, he contradicted himself in the video evidence, which the government presented at the sentencing. And there was no clear error to show that the expert, the court found that the expert was reliable, but there were some major issues with the expert's ability to put a valuation on the company. First of which is the financial information was done by Mr. Arrington, who was defrauding the company almost the entire time he was working for them. So already the expert is dealing with flawed information. And the government wouldn't have been in any better position because Mr. Arrington was in charge of the finances. As he states, I ran the company. I was in charge of the finances. I had sole control of the QuickBooks. So any information that the expert received, the government had the same information, and that wasn't going to change because Arrington was doing the books and it was faulty information. Among other reasons, the derecho happened in Iowa in 2020, and that contributed to a massive increase in Recon Roofing's business quite logically. And so the district court correctly found that that could be a once-in-a-lifetime, hopefully, thing, and that could have really skewed the valuation of the company. In addition, the expert relied on tax returns that didn't contain accurate information, and the valuation also relied heavily on a jobs completion report that Mr. Arrington was in charge of compiling. And the expert did admit at the sentencing that he did not fact-check that in any way. So that being said, the government does believe that the district court was correct in placing the burden on the defendant to prove any offset or restitution because he was in the best position to determine what the value he thought he was reimbursing was. He was in charge of the finances. He bought in for the $450. And he was privy to the same information that the government had. We weren't in any special position to prove the value of the company. And the government also would ask this court to affirm the sentencing of Mr. Arrington to the 36 months. The government believes that the district court was absolutely reasonable in doing that, and, in fact, the sentence was presumptively reasonable as it was a low-within guideline sentence. Thank you very much. Thank you for the argument. Mr. Hanson. Thank you. I'll start with a comment you made, Judge Benton, about the rough case and the language at the end of the opinion saying, if the defendant believes he can get an offset, he bears the burden to initiate further proceedings. I don't think that's clear with respect to who would bear the burden of proof once the defendant asked for a new hearing at the district court level. In fact, Judge Loken was on the panel in Ruff, and he wrote the decision on Fonseca. I think we can assume that Judge Loken was aware of Ruff, and then in Fonseca he said that the burden of proof was on the government in that case. Mr. Ruff was the first case in this line of cases. I date, counsel. You know what I'm going to do. I believe Bush or Pew predates Ruff, frankly. With respect to the government's counsel's attempt to distinguish Fonseca by citing 3663 large A, subsection B1A, that does say that the restitution should be reduced by the amount of the property returned. It does not, however, say who bears the burden of proof to prove the value of the property. So that is not a compelling distinction between this case and Fonseca. And then finally, the government made the point that the expert in this case was dealing with flawed information, and the government was in no better position to provide any other information to the district court. I disagree with that. Recon did not disappear after Mr. Arrington left the company in March of 2021. It is still an ongoing business today. And as far as I know, the remaining partner is 100 percent, the 100 percent owner of Recon today. So the government certainly had the opportunity to present any evidence in rebuttal that the value of the interest was not worth almost $500,000. It didn't take up that opportunity. And I don't think, I think the interests of justice require them to do something to prove that value when they're in a better position than the defendant. If we focus on property return, aren't there two species of property here? You have the cash that was stolen as one, and you have the units that were obtained by false pretenses as a second. Right. Saying that the property stolen was different than the property returned? Yeah. Is that right? Well, I think that goes back to the purpose of the MVRA generally, and that is to make victims whole. And I just, I don't think it's a compelling distinction whether we're dealing with tangible property or intangible property. I don't think it's a distinction whether we're dealing with money stolen or money in a different form returned. The bottom line is that the victim was made whole in a way, and that should have cut into the restitution and had an impact on the sentence ultimately. I see no other questions. Thank you both for the argument. Thank you. Case number 23-2173 is submitted for decision by the Court.  It does, Your Honor. Okay, this Court will stand.